CORNELIUS G. FLYNN *vs.* ABRAHAM CAPLAN & another.

Suffolk.    October 22, 1919. — January 8, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Equitable Restrictions. Equity Pleading and Practice,* Decree. *Words.* "Unlimited."

By the provisions of St. 1887, c. 418, (now R. L. c. 134, § 20,) a condition or restriction, by which the title or use of real property is affected, is limited to a period of thirty years unless the instrument creating the condition or restriction defines with exactitude a lesser or greater interval of time over which it shall run.

A deed to the city of Boston dated March 30, 1889, by the owners of land bounding upon a roadway and walk adjoining land owned by the city for park purposes, which contains building restrictions and recites that such restrictions "shall continue in force so long as such roadway and walk shall be maintained by said city of Boston," does not define with exactitude the interval of time over which the restrictions shall run; and, therefore, under St. 1887, c. 418, such restrictions are not in force after thirty years from the date of the deed.

A bill in equity was brought in 1917 to enjoin an alleged violation of an equitable restriction relating to the character of buildings to be erected upon certain land and was referred to a master, from whose report, filed on December 3, 1918, it appeared that the plaintiff offered no evidence of money damages sustained by him because of the alleged violation of the restriction. A final decree was entered dismissing the bill, from which the plaintiff appealed on March 25, 1919. The restrictions expired by limitation on March 30, 1919. *Held,* that, the plaintiff having offered no evidence of money damages, the bill should not be retained for the assessment of damages resulting from a violation of the restriction while it was in force, and that it should be dismissed with costs but without prejudice to the plaintiff's right to bring an action at law for damages resulting from the breach of the restriction if so advised.

BILL IN EQUITY, filed in the Superior Court on June 7, 1917, by the owner of two lots of land on the Riverway in Boston against the owners of another lot thereon, seeking to enjoin the defendants from violating restrictions which were in a deed to the city of Boston from the common grantors of the plaintiff and of the defendants.

In the Superior Court the suit was referred to a master on August 13, 1918. The restriction sought to be enforced was in a

deed of the trustees under the will of Katherine D. Hancock, late of Boston, and of Anna Catherine Page, a legatee under that will, to the city of Boston, dated March 30, 1889, and recorded on April 16, 1889, and was as follows:

"And for the consideration aforesaid and the further consideration that said City of Boston shall construct along the boundary line of said Park within said parcels of land a roadway and walk to which the Grantors and their heirs, successors and assigns (owners or occupants of Grantors' adjoining lands) shall have free access with the right to use the same subject to such reasonable rules and regulations as may from time to time be made by said Board of Park Commissioners or by any other Board or Department having for the time being the control and management of said Park, we do hereby covenant and agree to and with said City of Boston, that we and our heirs, successors and assign will hold our remaining land abutting upon said Park and to a depth of one hundred feet therefrom, subject to the following restrictions which shall be inserted or referred to in any conveyance hereafter made by us of the whole or any part of said restricted land. 1. No building erected or placed upon said premises shall be used for a livery or public stable or for any mechanical, mercantile or manufacturing purposes, nor shall exceed five stories in height above the basement or cellar nor exceed sixty feet in height from the mean grade of the edgestone or sidewalk in front to the ceiling of the extreme upper story, excepting churches or chapels and no roof shall be used for laundry or clothes drying purposes. 2. No wooden house arranged for more than one family nor wooden block consisting of more than two houses, nor wooden house or block standing at a distance less than five feet from the side line of the lot upon which the same is placed and no wooden house costing less than five thousand dollars nor brick or stone house costing less than seven thousand dollars nor apartment house costing less than four thousand dollars per suite of apartments, exclusive in each case of the cost of the land, shall be erected or placed upon said premises. 3. No building shall be erected or placed upon said premises within twenty-five feet from the exterior line of said Park provided that steps, windows, porticos and other usual projections appurtenant to the front wall of a building are to be allowed in this reserved space of twenty-five feet. Subject to the following

limitations viz; — first, that no projections of any kind (other than door steps and balustrades connected therewith, and also cornices at the roof of the building) shall extend more than five feet from the rear line of the aforesaid space: — Second, that no projections in the nature of a bay window corner bay, circular front or octagon front with the foundation wall sustaining the same (such foundation wall being a projection of the front wall) will be allowed, excepting oriel windows above the first story on a street corner, unless any horizontal section of such projections would fall within the external lines of trapezoids, the sum of whose bases upon the rear line of the aforesaid space does not exceed seven tenths of the whole front of the building and the base of any one of which trapezoids does not exceed eighteen feet. And whose side lines make an angle of forty-five degrees with the base. And each house in a block shall be considered a separate building within the meaning of this limitation. The restrictions above set forth shall continue in force so long as such roadway and walk shall be maintained by said City of Boston and the Grantors, their heirs, successors and assigns as owners of Grantors' adjoining lands shall have free access thereto and liberty to use the same for the purposes of a way subject to the rules and regulations aforesaid."

The suit was referred to a master. His report was filed on December 3, 1918. Among other findings therein were the following: "No evidence was offered as to present values of any of the properties in question, and there was no evidence upon which a finding can be based as to the extent of damage which the plaintiff may have suffered. His buildings are now fully occupied by tenants paying larger rentals for the suites than was being received when he purchased. There was no evidence that he had attempted to sell his property or that sales of other property in that vicinity had been made, and I find that whatever damage he has suffered by reason of the erection of the building on lot eight is wholly conjectural."

"So far as it may be proper for me to find as a matter of fact from the language of the whole of the original deed and from the foregoing facts and from such inferences of fact as may be properly drawn by me from those facts, I find that the imposing of the restrictions by the original grantors was not under any general scheme of improvement of their remaining land, but was for the

benefit of the City of Boston to enable it to control the class of buildings which should be constructed upon the land immediately adjacent to the park which they were then constructing, and I respectfully report to the court the question of law whether I am warranted upon the evidence in making such a finding."

Both parties filed objections and exceptions to the report of the master. These were heard by *J. F. Brown*, J., who filed the following memorandum on February 5, 1919: "I find and rule that the restrictions in question in the deed of Francis V. Balch *et al.* to the city of Boston, dated March 30, 1889, were not imposed under any general scheme of improvement of the grantors' remaining land; but were imposed solely for the benefit of the city of Boston, and that this bill cannot be maintained. All of the plaintiff's and all of the defendants' exceptions, inconsistent with this finding and ruling, are overruled." An interlocutory decree was entered in accordance with the memorandum and, later, a final decree was entered dismissing the bill with costs, from which the plaintiff appealed on March 25, 1919.

The case was argued at the bar in October, 1919, before *Rugg*, C. J., *Braley, De Courcy, Crosby,* & *Carroll*, JJ., and afterwards was submitted on briefs to all the Justices.

*F. Burke, (J. P. Bell* with him,) for the plaintiff.

*J. F. Barry, (J. Isaacs* with him,) for the defendants.

CROSBY, J. This is a suit in equity brought to enforce a building restriction on land owned by the defendants. The deed in which the restrictions were originally created was given by Francis V. Balch, Trustee, and another to the city of Boston, and was dated March 30, 1889; after reciting the restrictions it is provided that "The restrictions above set forth shall continue in force so long as such roadway and walk shall be maintained by said City of Boston. . . ." If we assume, without deciding, that the restrictions imposed by the original grantors were not merely for the benefit of the city of Boston but also attached to the remaining land of the grantors, the fundamental question is: Are they terminated by virtue of the provisions of St. 1887, c. 418, now R. L. c. 134, § 20? If the statute applies it is plain that they are no longer in existence, as more than thirty years have elapsed since the date of the deed by which they were created.

The words of the statute are these: "Section 20. Conditions

or restrictions, unlimited as to time, by which the title or use of real property is affected shall be limited to the term of thirty years after the date of the deed or other instrument or the date of the probate of the will creating them, except in cases of gifts or devises for public, charitable or religious purposes. The provisions of this section shall not apply to conditions or restrictions existing on the sixteenth day of July in the year eighteen hundred and eighty-seven or to those contained in a deed, gift or grant of the Commonwealth." The evident purposes of the statute was to terminate restrictions that have been in force thirty years, unless it appeared in the instrument creating them that they were to run for a definite term of years, or until the happening of an event certain to occur. The word "unlimited" means without confines, unrestricted, boundless. The city of Boston may maintain the roadway and walk forever or for a lesser period, in accordance with the determination of the city. The restriction may therefore be unlimited as to time because the city may never cease to maintain the roadway and walk; and in any circumstance it is terminable upon the happening of an event not certain to come to pass and hence it is not protected against termination at the expiration of thirty years prescribed by the statute. This conclusion follows by analogy the rule of the statute of frauds. If an oral contract may be completely performed within a year it is not within the statute of frauds. R. L. c. 74, § 1. *Peters* v. *Westborough,* 19 Pick. 364. *Somerby* v. *Buntin,* 118 Mass. 279, 286. A grant of real estate to be devoted to certain uses, with a provision that if it is afterwards diverted to other purposes the title of the grantee shall cease and thereafter be vested in others, is a grant of an estate which is to continue until the happening of a certain event and then cease. "That event may happen at any time, or it may never happen. Because the estate may last forever, it is a fee." *First Universalist Society of North Boland* v. *Boland,* 155 Mass. 171, 174. *Brattle Square Church* v. *Grant,* 3 Gray, 142, 156, 157. *Jamaica Pond Aqueduct Corp.* v. *Chandler,* 9 Allen, 159, 168.

A condition or restriction, by which title or use of real property is affected, is limited by the statute to a period of thirty years, unless the instrument creating the right shall define with exactitude a lesser or greater interval of time over which the condition or the restriction shall run. See *Boston Baptist Social Union* v. *Boston*

*University,* 183 Mass. 202, 205; *Loud* v. *Pendergast,* 206 Mass. 122, 125; *Riverbank Improvement Co.* v. *Bancroft,* 209 Mass. 217, 221. As more than thirty years have elapsed since the restriction was created a majority of the court are of opinion that it is no longer in existence and the plaintiff is not entitled to injunctive relief.

As the plaintiff at the hearing before the master offered no evidence of money damages sustained by him because of a violation of the restriction while it was in force, the bill should not be retained for an assessment of such damages; it should be dismissed with costs, but without prejudice to his right to sue at law if so advised.

*Decree accordingly.*