PROPRIETORS OF LOCKS AND CANALS ON MERRIMACK RIVER
*vs.* BOSTON AND MAINE RAILROAD.

Middlesex.   November 16, 1922. — May 23, 1923.

Present: RUGG, C.J., DeCOURCY, CROSBY, & CARROLL, JJ.

*Landlord and Tenant,* Construction of lease.

The habendum clause in a lease in 1837 to the Boston and Lowell Railroad Corporation, incorporated in 1830 with a reservation of right by the Commonwealth to purchase all its property after the expiration of a period, extended in 1832 to twenty years from the opening for use of the railroad, was as follows: " To Have and to Hold to said party of the second part, the said premises during their continuance as a corporation, and while they continue to be the sole owners of said Rail Road, for the annual rent . . . and in case said party of the second part shall fail and neglect to pay said rent for the space of one year after the same shall become due, or in case said Rail Road should become the property of the Commonwealth, then in either of these events, the said premises shall revert to, and become the proper estate of said party of the first part."   Immediately following the

foregoing in the lease was a covenant by the railroad corporation to pay the stipulated annual rent " while they shall be and remain the owners and Proprietors of said Railroad and whenever they shall cease to be a body corporate or shall cease to be the owners and Proprietors of said Road, they will yield up and surrender said premises to said party of the first part." *Held,* that

(1) The only conditions upon which the lease was to be terminated were failures to pay the rent as stipulated or " in case said Rail Road should become the property of the Commonwealth;"

(2) The words " in either of these events " do not refer to the words " and while they continue to be the sole owners of said Rail Road;"

(3) By reason of the consolidation of the Boston and Lowell Railroad Corporation and other railroad corporations with the Boston and Maine Railroad under Spec. St. 1915, c. 380, and the agreement for consolidation pursuant thereto, the Boston and Maine Railroad became in substance and effect the Boston and Lowell Railroad Corporation so far as to enable it to enjoy the rights conveyed to that corporation under the lease;

(4) The rent having been paid with regularity and the Commonwealth not having taken over the property of the lessee, the lease was not terminated and the lessor could not maintain a writ of entry against the Boston and Maine Railroad.

WRIT OF ENTRY in the Land Court for the possession of three parcels of land in Lowell, bounded by Thorndike Street, Pawtucket Canal, Hamilton Canal and in the vicinity of Jackson Street and West Jackson Street. Writ dated January 21, 1921.

The pleadings and facts agreed to by the parties are described in the opinion. The action was heard by *Corbett,* J. The habendum and covenant clauses in the leases, upon which the tenant based his right to possession, followed each other and were as follows:

" To Have and to Hold to said party of the second part, [The Boston and Lowell Railroad Corporation] the said premises during their continuance as a Corporation, and while they continue to be the sole owners of said Rail Road, for the annual rent of Four Hundred Dollars to be paid on the first day of January each and every year during said term, and in case said party of the second part shall fail and neglect to pay said rent for the space of one year after the same shall become due, or in case said Rail Road should become the property of the Commonwealth, then in either of these events, the said premises shall revert to, and become the proper estate of said party of the first part.

" And the said party of the second part do covenant to and with the party of the first part, that they will pay an annual rent to said party of the first part of Four Hundred Dollars on the first day of January of each year, while they shall be, and remain the owners and Proprietors of said Railroad, and whenever they shall cease to be the owners and Proprietors of said Road, or a body corporate, they will yield up and surrender said premises to said party of the first part."

The demandant asked for and the judge refused to give the following rulings:

" 1. That the tenant shows no title to the demanded premises nor any right to the possession, use or enjoyment of the same.

" 2. That the leases of the demanded premises to the Boston and Lowell Railroad Corporation, referred to in the pleadings, had expired prior to the commencement of this suit.

" 3. That the tenant, the Boston and Maine Railroad, never succeeded to the rights of the Boston and Lowell Railroad Corporation as lessee under the leases referred to in the pleadings.

" 4. That the Boston and Lowell Railroad Corporation, lessee named in the leases referred to in the pleadings, by reason of its consolidation with the Boston and Maine Railroad and upon the completion of said consolidation, ceased, for the purposes of said leases, to be the owner and proprietor of its railroad.

" 5. That for the purpose of determining the meaning and effect of the leases referred to in the pleadings, the Boston and Maine Railroad, the tenant in this suit, is not to be deemed, in any sense identical with, or a continuation of, the original lessee.

" 6. That the leased premises described in and demised by the leases referred to in the pleadings reverted to the lessor, the demandant herein, upon the taking effect of the consolidation of the Boston and Lowell Railroad Corporation with the Boston and Maine Railroad.

" 7. That the leased premises, described in and demised

by the leases referred to in the pleadings, reverted to the lessor, the demandant herein, upon the conveyance by the lessee, the Boston and Lowell Railroad Corporation, to the Boston and Maine Railroad, of its railroad and other property by the deed dated December 1, 1919."

The tenant asked for and the judge gave the following ruling:

" The situation established by the operation of Sp. St. 1915, c. 380, as amended; of the similar acts of New Hampshire and Maine and by the proceedings taken under the authority of said acts, is not such as entitles the demandant to recover in this action, by virtue of the provisions in the leases, under the proper construction or interpretation thereof, according to the principles of construction or interpretation legally applicable, in the light of such facts as may properly be considered in determining the issues of this case."

Judgment was ordered for the tenant; and the demandant alleged exceptions.

*F. Rackemann, (H. M. Davis* with him,) for the demandant.
*A. R. Tisdale,* for the tenant.

RUGG, C.J.   This is a writ of entry to recover three parcels of land in Lowell leased by the demandant to the Boston and Lowell Railroad Corporation by three leases dated respectively in 1837, 1840 and 1845.   It is the contention of the demandant that the leases have expired by their own limitations.   The plea was *nul disseisin,* with specification of defence that the tenant claims to hold possession by virtue of the leases; that the Boston and Lowell Railroad Corporation was on the first of December, 1919, consolidated with the tenant, the Boston and Maine Railroad, and that since that consolidation, the possession of the tenant is by virtue of its being in part, although under another name, the Boston and Lowell Railroad Corporation, the original lessee.

The demandant is a corporation established by St. 1792, c. 13, and supplementary acts.   The tenant is a corporation established by St. 1843, c. 90, and supplementary acts, and by statutes of Maine, New Hampshire and New York.   The Boston and Lowell Railroad Corporation was established

by St. 1830, c. 4, with reservation of right by the Common-
wealth to purchase all its property after the expiration of
ten years from the opening for use of the railroad, subse-
quently by St. 1832, c. 87, extended to twenty years.    It
operated its railroad between Lowell and Boston until
1887, when by authority of statute it leased all its fran-
chises and property to the tenant, which thereafter operated
that railroad as a part of its system.

The Boston and Lowell Railroad Corporation, together
with several other railroad corporations, termed for con-
venience "subsidiary companies," were authorized to con-
solidate with the tenant, the Boston and Maine Railroad,
by Spec. St. 1915, c. 380, and acts in amendment thereof,
and the acts of other States.    Pursuant to that act the
several railroad corporations became consolidated and joined
with the tenant, the Boston and Maine Railroad, forming
one corporation under that name.    An agreement to that
end was executed by all the corporations including the
Boston and Lowell Railroad Corporation.    *Brown* v. *Boston
& Maine Railroad,* 233 Mass. 502, 511.

Each of the leases here in issue contained an habendum
clause and a covenant.    The covenant clause has no deci-
sive significance upon the issue here depending, but resort
may be had to it for light upon the meaning of the habendum
clause.

The habendum clause shows that the leases are for an in-
definite term.    They are to continue until the happening
of one of several events and then to cease.    The crucial
event may happen at any time, or it may never happen.
The leases, therefore, may never come to an end.    The
effect of the words used was to convey a base fee.    It is
enough to say without further discussion that the case upon
this point is governed by *Jamaica Pond Aqueduct Corp.*
v. *Chandler,* 9 Allen, 159, *First Universalist Society of
North Adams* v. *Boland,* 155 Mass. 171, *Flynn* v. *Caplan*
234 Mass. 516, *Institution for Savings in Roxbury* v. *Rox-
bury Home for Aged Women,* 244 Mass. 583.

A closer analysis of the leases is necessary to determine
exactly their force and effect.    The words "To Have and

to Hold to said party of the second part, the said premises during their continuance as a Corporation," are fitly chosen to convey a fee to a corporation. The corporate existence of the lessee has been continued and its corporate meetings held notwithstanding the consolidation of it with the tenant. The words next following, namely, " and while they continue to be the sole owners of said Rail Road," can best be considered after the rest of the paragraph has been interpreted. Next occur the words expressive of the rent to be paid and the time for its payment. These need not be discussed in detail because nothing essential turns upon them. It is not contended that there has been any breach in these particulars. Then follow the words plainly expressive of the condition on which the leases shall terminate: " and in case said party of the second part shall fail and neglect to pay said rent for the space of one year after the same shall become due, or in case said Rail Road should become the property of the Commonwealth, then in either of these events, the said premises shall revert to, and become the proper estate of said party of the first part." These are words avowedly stating in precise terms the conditions on which the estate shall terminate. They specifically declare the events which shall cause a reverter. The grammatical form of this part of the clause indicates that these two alone are the crucial occurrences which shall bring the estate to an end. The words " and in case . . . or in case . . . in either of these events " naturally import a choice of one or the other of the two grounds specified. The inference naturally to be drawn from these words and this arrangement is that a purpose is manifested to make these two the only decisive events with reference to the term of the estate. If one resorts to approved canons for the construction of the language, the same result is reached. The structure of the sentence and the common meaning of the words alike confirm the idea that reverter rests upon one or the other of these two events. Neither of these events has happened. The rent has been promptly paid. The Commonwealth has not exercised its power to take over the property of the lessee.

The words already quoted, " and while they continue to be the sole owners of said Rail Road," must be given an interpretation in connection with the rest of the instrument of which they are a part.    It would in every aspect be a strained construction to hold that the words " in either of these events " stretch back to include this phrase.    We should hesitate to say that in the context this phrase could rightly be interpreted as describing an event on the happening of which the estate of the lessee was to end and to revert. Without resting the decision on that ground, other considerations may be noted.    The word " sole " adds little if anything to the force of the word " owners."    *Insurance Co.* v. *Haven,* 95 U. S. 242.    The word " sole " does not occur in the covenant clause of the lease where the reciprocal duty of the lessee is set forth.    The covenant by the lessee is to surrender the premises when they shall " cease to be the owners and Proprietors of said Road."

The object of the consolidation of two or more solvent corporations into one is not usually to wind up the business of the old corporations but to continue as a unit that which theretofore had been separate.    Whether the old corporations are merged into the new or are continued in existence under a new name depends upon the terms of the statute and contract under which the consolidation is brought about, and upon the pre-existing relations of the constituent corporations to which the statute and contract relate.    The subject matter and the written instruments may give color each to the other.    All the circumstances must be considered in reaching a conclusion as to the nature of the transaction. A consolidation differs from a sale and from simple succession.    In effecting it, instruments of transfer often are used. When different corporations are consolidated, commonly the franchises, privileges, rights and properties continue their existence, to be enjoyed and exercised by the new or enlarged or reorganized corporate entity.

The statute and the agreement for consolidation of the Boston and Lowell Railroad Corporation with the Boston and Maine Railroad contained phrases apt to express the element of succession to all rights and property and con-

tinuity of legal person. So far as statute or agreement can compass that result, the Boston and Maine Railroad as tenant stands in the same place as did the Boston and Lowell Railroad Corporation as original lessee.

The Legislature cannot deprive the demandant of its rights under its contracts. The lease was made, however, to a public service corporation. This fact, known to the demandant at the time of the execution of the contracts, carries with it some implications as to the power of the Legislature over such corporations. The tenant performs the same service to the community and to the demandant as did the original lessee. It is bound to do all that can be required of a railroad corporation operating lines between Lowell and Boston. We are of opinion that the tenant, under the statute and contract in the light of the special circumstances, is in substance and effect the Boston and Lowell Railroad Corporation so far as to enable it to enjoy the rights conveyed to that corporation under the leases here in question. The case on this point falls under the principle of several decisions. *John Hancock Mutual Life Ins. Co.* v. *Worcester, Nashua & Rochester Railroad,* 149 Mass. 214. *Day* v. *Worcester, Nashua, & Rochester Railroad,* 151 Mass. 302. *Central Railroad & Banking Co.* v. *Georgia,* 92 U. S. 665. *Green County* v. *Conness,* 109 U. S. 104. *Wabash, St. Louis & Pacific Railway* v. *Ham,* 114 U. S. 587, 595.

*Exceptions overruled.*